UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
MICHAEL GARNER,                     )
          Petitioner,               )
                                    )
v.                                  )          Civil Action No. 05-30035-MAP
                                    )
MICHAEL THOMPSON,                   )
          Respondent.               )
_____)

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION
TO THE PETITION FOR HABEAS CORPUS**

Respondent Michael Thompson submits this memorandum of law in opposition to the

petition for habeas corpus filed by petitioner Michael Garner.  The petition should be denied

because Mr. Garner has failed to demonstrate that the state courts' adjudication of his claims

resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the United States Supreme Court.

**I.     The State Court Adjudication**

On December 10 and 16, 1998, a Hampden County Grand Jury indicted Petitioner on one

count each of  unlawful possession of a firearm and unlawful possession of ammunition, in

violation of Mass. Gen Laws c. 269, § 10(h).  Supplemental Answer at Tab D, pp. R8-R9

[hereinafter "Supp. Ans. at ___:___"].  The indictments further charged that Petitioner had

violated that section after having previously been convicted of three serious drug offenses, *id.*, a

violation of M.G.L. c. 269, § 10G(c), that requires an enhanced prison sentence of not less than

fifteen years.  The indictments were tried on September 7, 1999, in a jury-waived, bifurcated trial

in Hampden County Superior Court, before Justice Sweeney.  Second Supplemental Answer

(Transcripts) at Tab II [hereinafter "Tr. ___:___"].  After the first portion of the bench trial, the

court found Petitioner guilty of firearms and ammunition possession.  Tr.  II:106.  The court then immediately conducted a second bench trial on the question of whether Petitioner was eligible for the enhanced sentencing provision of § 10G.  Tr. II:106-31.  At the close of evidence, the court reserved judgment on that issue, Tr. II:136, ultimately finding on November 29, 1999, that Petitioner had, beyond a reasonable doubt, been convicted of three serious drug offenses.  Tr. III:4-5.  The court sentenced Petitioner to concurrent fifteen-year terms of imprisonment.  Supp. Ans. at D:R2, R6.

Petitioner timely appealed, Supp. Ans. at D:R12, and then moved to stay appellate proceedings, pending resolution of a motion in the trial court for a new trial.  That motion was filed on June 22, 2001, and raised two challenges to the enhanced sentencing determination: that the booking records used by the Commonwealth's fingerprint witness to establish identity as to the three prior drug convictions were inadmissible hearsay, and that counsel was ineffective in failing to object on that basis and failing to move for a required finding of not guilty on the ground that the evidence of prior convictions was insufficient to sustain the enhanced sentence. Supp. Ans. at G:1-9.  Justice Sweeney denied the motion on August 26, 2002, ruling that the booking records were independently admissible as business records and thus were a permissible basis for the expert to render his opinion that the fingerprints identified Petitioner as the person convicted of the earlier charges.  Supp. Ans. at I:2-5.   Thus, the court concluded that the failure to object or to move for a required finding was not ineffective assistance, since either action would have been futile.  Supp. Ans. at I:5-7.  Petitioner timely appealed the denial of the new trial motion.  Supp. Ans. at D:R29.

2

In a consolidated appeal to the Massachusetts Appeals Court, Petitioner raised three issues: 1) that the evidence was insufficient to sustain the firearms possession convictions; 2) that the enhanced sentence determination was based upon inadmissible hearsay; and 3) that trial counsel was ineffective in failing to object to the hearsay evidence used at the sentencing portion of the trial and in failing to move for a required finding of not guilty as to that issue. Supp. Ans. at D:1. The Appeals Court, on November 6, 2003, rejected these claims and affirmed the convictions, sentences, and denial of the new trial motion. Supp. Ans. at F:1-2. On November 26, 2003, Petitioner sought further appellate review in the Supreme Judicial Court, making the same three claims. Supp. Ans at A:1, B:8. The S.J.C. denied further review without comment on December 29, 2003.

## II.     The Facts

Investigating a crime in the early morning hours of November 6, 1998, Springfield Police officers approached a two-story house in Springfield. Tr. II:68-71. From inside, the officers heard some scuffling noises and people walking around, and a woman peeked out of a second-floor window. Tr. II:34. The officers instructed her to open the door, and after speaking with them, she let them inside the house, where they found a man and a woman sitting in the kitchen of a second-floor apartment, which appeared to have no electricity. Tr. II:34-35, 38; 74-75. One officer entered an adjacent bedroom and looked into a walk-in closet, which contained a pile of clothes. Tr. II:39-40. The officer saw a gun amidst the clothing, with the barrel pointing in his direction. Tr. II:40. The officer entered the closet to retrieve the gun and stepped on Petitioner, who was hidden under the clothes. Tr. II:45-46, 64.

The trial court made various factual findings with respect to each of the issues Petitioner raises in this proceedings. The findings of the state courts are presumptively correct. 28 U.S.C. § 2254(e)(1). *See Gunter v. Maloney*, 291 F.3d 74, 76 (1st Cir. 2002); *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001); *Coombs v. Maine*, 202 F.3d 14, 18 (1st Cir. 2000). This presumption of correctness applies to facts found both by the state trial and appellate courts, *Rashad v. Walsh*, 300 F.3d 27, 35 (1st Cir. 2002), and extends to inferences drawn by the state courts from those factual determinations, *Parke v. Raley*, 506 U.S. 20, 35 (1992), as well as to any factual findings implicit in the state courts' ruling. *Weeks v. Snyder*, 219 F.3d 245, 258 (3d. Cir.), *cert. denied*, 531 U.S. 1003 (2000). The presumptive correctness of state court factual determinations may only be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The trial court made the following findings in rejecting Petitioner's motion for a required finding of not guilty at the close of the Commonwealth's case:

> [T]he Commonwealth has presented sufficient evidence from which a reasonable trier of fact viewing the evidence in the light most favorable to the Commonwealth could find beyond a reasonable doubt that the defendant possessed the gun and the ammunition. The fact that the defendant was in a confined area, namely, this narrow, six-foot closet, with a gun in plain view, would satisfy the knowledge requirement that there was a gun. Knowledge alone, of course is not enough to establish possession, but the gun was in plain view.

> The gun was within a hand's reach of the defendant, and indeed, I believe that counts more towards actual possession than constructive possession, the law on actual possession stating that possession may be inferred from either being on the person's body or within their immediate vicinity or control. This was clearly, from the officer's description, within the defendant's immediate vicinity and control.

> In addition to that, the officer heard noises overhead when the announcement was made that the police were on the scene. When the announcement "Police" was made, when the first knocking on the first floor began, he heard scuffling up on the second floor. This, taken with the other evidence, would allow the Court to draw the inference that it was the defendant diving for cover and trying to hide himself from

4

the police in that closet, in that bedroom on the second floor, where no one else was present.

And of course, the fact that the gun was in view, and the defendant was out of view, although within literally a hand's reach of the gun would allow the Court to draw the inference, using the *Latimore* standard, that the defendant was attempting to secrete himself from the police, so that the gun would be taken, and he would not be discovered; because obviously, if he and the gun were both found under the clothing, that would be an even more incriminating situation.

So, the evidence here does allow the inference that the defendant knew there was a gun, and that the gun was loaded. There was a stipulation that it was capable of firing; that the ammunition was ammunition; that it was in the immediate vicinity and control of the defendant; that it could be inferred that the defendant ran to hide himself from the police when he heard the announcement, "Police." And the Court could determine that he was, in fact, hiding himself by lying on the floor, covering himself with clothes, and leaving the gun in plain view right next to him, in the hopes that the police would pick up the gun and walk away, rather than find his body under the mound of clothing.

Tr. II:80-82.

As to the sentencing question, the court found that: "I am convinced beyond a reasonable doubt that [Petitioner] has on three prior occasions been convicted of three serious drug offenses." Tr. III:4. Indeed, the court reiterated that "I have absolutely no doubt whatsoever that on at least three prior occasions, Mr. Garner has been convicted of drug offenses that fall within the specific language of the statute." Tr. III:5.

As to the question of the fingerprint evidence admitted at the sentencing phase of the trial, and the effectiveness of counsel with respect to that matter, the trial court made substantial written findings. The court found that Springfield Police Officer Lee Prentice is a veteran police officer, extensively trained in fingerprint analysis, and that Officer Prentice testified as an expert fingerprint examiner after reviewing the booking records for a Michael Garner, arrested for, *inter alia*, three charges of drug possession with intent to distribute. Supp. Ans. at I:2. The court

found that the Commonwealth introduced certified copies of convictions of Michael Garner for

narcotics violations connected to those arrests. *Id.* The court found that the booking sheets were

gathered in the regular course of business of the police department, that they were made at the

time of defendant's arrests, and that defendant himself provided the biographical information

contained on the booking sheets. Supp. Ans. at I:4 & n.3. The fingerprint expert's conclusion

that the fingerprints on each of the booking sheets belonged to the same person, Michael Garner,

with the same date of birth, was based upon the data contained in these booking sheets. *Id.*

Ultimately, the court concluded that:

> During the second portion of the bifurcated trial, the Commonwealth produced
> credible evidence of the defendant's fingerprint card from his November 6, 1998
> booking for the underlying offenses. Officer Prentice then compared the fingerprints
> on the November 6, 1998 card with the fingerprints taken at the times of the three
> previous offenses. All the prints matched. Additionally the dates of birth matched.
> This evidence was sufficient to meet the *Latimore . . .* standard. Thus, a motion for
> required finding of not guilty would have been futile.

Supp. Ans. at I:6-7.

III.    **The Appeals Court Decision Was Neither Contrary to nor an Unreasonable
        Application of Clearly Established Federal Law, as Determined by the United States
        Supreme Court, and did not Rest on an Unreasonable Determination of the Facts in
        Light of the Evidence Presented at Trial.**

The instant petition raises two grounds for relief. Ground 1 argues that there was

insufficient evidence presented at trial to convict Petitioner of firearm or ammunition possession.

Ground 2 claims that trial counsel was ineffective in failing to object to the admission of the

booking sheets reflecting Petitioner's prior arrests and in failing to move for a required finding of

not guilty as to the sentencing enhancement portion of the indictment. Both claims fail. The

Appeals Court decision was neither contrary to nor an unreasonable application of clearly

6

established federal law as determined by the United States Supreme Court.

**A.    *Standard of review***

Habeas corpus review of claims previously adjudicated by state courts is both limited and

highly deferential:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d).  This "highly deferential standard for evaluating state-court rulings" reflects

the overarching structure of the federal habeas corpus scheme, which vests "primary

responsibility" for evaluating federal law claims raised in criminal trials in the state courts, courts

which must be presumed in habeas corpus courts to know and follow the law.  *Woodford v.*

*Visciotti*, 537 U.S.19, 24, 27 (2002) (per curiam).  Thus, as the Supreme Court has repeatedly

emphasized, it is not sufficient to warrant habeas corpus relief that the state court's decision was

erroneous or incorrect.  *Id*. at 27; *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is not even

sufficient that the state court "failed to apply" Federal law clearly established by the Supreme

Court,  *Early v. Packer*, 537 U.S. 3, 10 (2002) (per curiam), or that the state court committed

"clear error," or that the reviewing court is of the "firm conviction" that the state court's ruling

was erroneous.  *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003).

7

Rather, federal courts must decline to intervene to disturb state court judgments unless Petitioner demonstrates that his claim falls into one of the narrowly drawn categories set forth in the statute. "Under § 2254(d)(1), the writ may only issue if one of . . . two conditions is satisfied . . . ." *Williams*, 529 U.S. at 412. "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. *Id*. at 412-13. The analysis under the "unreasonable application" clause is distinct, and relief is available only if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. To be entitled to relief under the latter clause, the burden is on Petitioner to show that the state court decision applied the clearly established law in an "objectively unreasonable" manner. *Id*. at 409-10. Since "[a]pplying a general standard to a specific case can demand a substantial element of judgment," "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 124 S. Ct. 2140, 2149 (2004). The clearly established law that is relevant to the analysis under § 2254(d)(1) is limited to the holdings of United States Supreme Court cases extant at the time of the state court decision, and does not include the dicta of such cases. *Id*. at 2147; *Williams*, 529 U.S. at 412.

Surpassing even the substantial deference habeas courts pay state court determinations of federal questions is that accorded decisions regarding state law, which are completely unreviewable in habeas corpus, as the Supreme Court has repeatedly held:

> We have stated many times that federal habeas corpus relief does not lie for errors

of state law.   Today, we reemphasize that it is not the  province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.

*Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Factual determinations of state courts are also granted substantial deference.  To satisfy § 2254(d)(2), a petitioner must show that the state's factual determination was objectively unreasonable.  *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 399 (2000)).  Objective unreasonableness is not merely an incorrect or erroneous decision.  *Williams*, 529 U.S. at 410; *see also Ward v. Sternes*, 334 F.3d 696, 703-04 (7th Cir. 2003) ("petitioner's challenge to a decision based on a factual determination will not succeed if the petitioner merely evidences that the state court committed error.  Instead, he must further establish that the state court committed unreasonable error."); *Dennis v. Mitchell*, 354 F.3d 511, 518 (6th Cir. 2003) ("federal habeas court may not grant habeas relief under § 2254(d)(2) merely because it disagrees with a state trial court's factual determination").

Moreover, § 2254(d)(2) must be interpreted in conjunction with § 2254(e)(1), which specifies both that "a determination of a factual issue made by a State court shall be presumed to be correct," and that "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Sanna v. DiPaolo*, 265 F.3d 1, 7 (1st Cir. 2001).  *See also Miller-El,* 537 U.S. at 341 (noting that to prevail under § 2254(d)(2), habeas petitioner must both disprove the factual finding by clear and convincing evidence and demonstrate that the court's factual determination was objectively unreasonable).

.

9

**B.    *The trial court's finding that there was sufficient evidence to convict Petitioner of firearm possession did not rest on objectively unreasonable factual determination, and Petitioner has offered no clear and convincing evidence to the contrary.***

Petitioner has never suggested (and does not appear to suggest here) that the state courts applied an incorrect or unreasonable legal standard in evaluating his sufficiency of the evidence challenge.  *See* Supp. Ans. at B:9-10; D:8-16.  As Petitioner argued, Supp. Ans. at D:8, the proper standard is the one set forth in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) and *Commonwealth v. Latimore*, 393 N.E.2d 370, 374-75 (Mass. 1979) (quoting *Jackson*), that is "whether after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (emphasis in original).  This is the standard both the trial court, Tr. II:80-82, and the Appeals Court, Supp. Ans. at F:1, applied.

Rather, Petitioner's argument seems to be that the trial court's factual determination went against the evidence.  As noted above, however, this kind of claim faces an extraordinarily demanding standard on federal collateral review. Petitioner must show not only that the state court's factual determination was objectively unreasonable in light of the evidence before it, 28 U.S.C. § 2254(d)(2), but also must come forward with clear and convincing evidence to the contrary.  28 U.S.C. § 2254 (e)(1).  Petitioner has manifestly failed to do either.

The essential elements of possession under Massachusetts law are "knowledge plus ability and intention to control."  *Commonwealth v. Fernandez*, 723 N.E2d 527, 529 (Mass. App. Ct. 2000).  Proof of actual, physical possession of an item will normally suffice to demonstrate the knowledge, ability to control, and intent to control, although these elements can also be met if

the defendant never touches the object in question--that is under a theory of "constructive possession." *See id.* Here, as the trial court explained, there was substantial evidence from which the court could have inferred that Petitioner actually possessed the firearm, principally, the fact that the gun was found a "hand's reach" from Petitioner in the closet where he was hiding, that is "clearly . . . within the defendant's immediate vicinity and control." Tr. II:81.

Petitioner claims that the trial court's determination that Petitioner had knowledge of the gun's presence rested on a faulty foundation because the court found that the gun was "in plain view," despite the fact that the evidence was that the apartment was lit by a candle or flame in the adjacent kitchen. *See* Supp. Ans. at B:9-10. As an initial matter, Petitioner shows, at most, that it was possible to infer that it was too dark to see the gun without a flashlight; he offers no direct evidence (much less clear and convincing evidence) that this was, in fact, the case. More to the point, however, the trial court's sufficiency findings on the knowledge element did not depend on a judgment that the gun was plainly visible without a flashlight. Rather, the court made clear that it found the extremely close proximity to Petitioner (in a room where he was the only occupant) sufficient to support an inference that Petitioner knew of the gun's presence. Tr. II:80. As the court pointed out, the fact that the gun was in plain view (in the sense that it was not covered by clothes) supported the inference that Petitioner had purposely placed it in the open to distract the police from his adjacent hiding place, an inference is unaffected by the fact that the gun might not have been visible without a flashlight, since the officers were armed with flashlights. Tr. II:82. In addition, evidence was admitted in defendant's case which destroyed any inference that the gun had been stored in the closet before Petitioner hid there from the police. Specifically, Katherine Hill, a friend of Petitioner's, testified that "Jeff"--the man seated at the kitchen table--

11

had been showing the gun to the people in the kitchen, including Mr. Garner, immediately before the police arrived. Tr. II:91-92. In short, there was ample evidence from which the trial court could have concluded that Petitioner knew that a gun--which had just been in his presence in another room--was lying a hand's reach away from where he was hiding, in a closet, in an otherwise empty room. Petitioner has neither offered clear and convincing evidence to overcome this determination nor shown that the determination was objectively unreasonable in light of the evidence presented.

  **C.**  ***The Appeals Court's decision that trial counsel was not ineffective for failing to make futile objections to the admission of prior booking records at the sentencing phase of the trial did not contradict or unreasonably apply clearly established Federal law.***

  Petitioner's claim that he received constitutionally ineffective assistance of counsel during the sentencing phase of the trial is equally unavailing. The standard for ineffective assistance under Massachusetts law is, as Petitioner argued, Supp. Ans. at D:23, and the Appeals Court held, Supp. Ans. at F:1, "whether there has been serious incompetency, inefficiency, or inattention of counsel--behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer--and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth v. Saferian*, 315 N.E.2d 878, 883 (Mass. 1974). This standard is, as the First Circuit has held, the functional equivalent of the Federal law standard, established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Castillo v. Matesanz*, 348 F.3d 1, 12 (1st Cir. 2003).

  Petitioner does not suggest that the Appeals Court applied the wrong ineffectiveness standard, or that its conclusion that failure to make a futile objection is not ineffective assistance

is not recognized at Federal law, *see, e.g., Vieux v. Pepe*, 184 F.3d 59, 64 (failure to make futile objection not ineffective assistance), but rather that the Appeals Court erred in its determination that objecting to the booking records or moving for a required finding would have been futile. Supp. Ans. at B:11-18.  Specifically, Petitioner perseverates that the information associated with the fingerprints in the booking records was inadmissible hearsay, notwithstanding the trial court's finding that it would have admitted the records as business records if objection had been made. Whatever the merits of this argument, it is clearly a matter of state evidentiary law, and Petitioner argued it exclusively as such in the state courts.  Similarly, the propriety of moving for a directed verdict depends entirely on the premise that the evidence tying Petitioner to the prior convictions was inadmissible as a matter of state law, a premise that the Appeals Court rejected, and that this Court is consequently powerless to entertain in these proceedings.

Petitioner's ineffective assistance claim turns decisively on questions of state law not open for reexamination by this Court on collateral review.  Taking those rulings as correct (as this Court must), the Appeals Court neither contradicted nor unreasonably applied clearly established Federal law in rejecting Petitioner's ineffective assistance of counsel claims on the ground that the alternative course Petitioner now suggests would have been equally fruitless.

### Conclusion

For these reasons, the petition for habeas corpus should be denied..

Respectfully submitted,

THOMAS F. REILLY
ATTORNEY GENERAL


/s/ David M. Lieber
David M. Lieber (BBO# 653841)
Assistant Attorney General
Criminal Bureau
One Ashburton Place
Boston, Massachusetts  02108
(617) 727-2200 ext.2827

ATTORNEYS FOR RESPONDENT

Dated: September 12, 2005